UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SANDRA QUINN, individually and as administratrix of
the estate of E.Q., deceased; and PETER QUINN,
individually,

                              Plaintiffs,

v.                                                      7:09-CV-0793
                                                        (GTS/DEP)
UNITED STATES; MARY ALLEN, D.O.; and
SAMARITAN MEDICAL CENTER,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

FITZGERALD & FITZGERALD, LLP                    JAMES P. FITZGERALD, ESQ.
   Counsel for Plaintiffs
538 Riverdale Avenue
Yonkers, NY 10705

HON. RICHARD S. HARTUNIAN                       WILLIAM F. LARKIN, ESQ.
   United States Attorney for the N.D.N.Y.      Assistant United States Attorney
   Counsel for United States
100 South Clinton Street
Syracuse, NY 13261-7198

MARTIN, GANOTIS, BROWN, MOULD & CURRIE,         BRIAN M. GARGANO, ESQ.
   LLP
   Counsel for Mary Allen, D. O.
5790 Widewaters Parkway
Syracuse, NY 13214

MACKENZIE HUGHES LLP                            JENNIFER PLOETZ WILLIAMS, ESQ.
   Counsel for Samaritan Medical Center         STEPHEN T. HELMER, ESQ.
101 South Salina Street
P.O. Box 4967
Syracuse, NY 13221-4967

HON. GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this medical malpractice action filed by Sandra Quinn, individually and as administratrix of the estate her deceased infant daughter, E.Q., and Peter Quinn, individually ("Plaintiffs") against the United States; Mary Allen, D.O. ("Dr. Allen"); and Samaritan Medical Center ("SMC") (collectively, "Defendants"), are motions for partial summary judgment by Defendants United States and Allen and a motion for summary judgment by Defendant SMC.  (Dkt. Nos. 55, 56, 57.)  For the reasons set forth below, the motion for partial summary judgment by Defendant United States is granted, the motion for partial summary judgment by Defendant Allen is granted in part and denied in part, and the motion for summary judgment by Defendant SMC is granted in part and denied in part.

## I.     RELEVANT BACKGROUND

### A.     **Plaintiffs' Amended Complaint**

Generally, Plaintiffs' Amended Complaint asserts five causes of action stemming from Ms. Quinn's pre-natal care and her delivery of E. Q. as well as E.Q.'s post-natal medical treatment and death.  (*See generally* Dkt. No. 16 [Pls.' Am. Compl.].)

More specifically, Plaintiffs' Amended Complaint alleges: (1) conscious pain and suffering of E.Q. as a result of Defendants' negligence and malpractice; (2) lack of informed consent by Ms. Quinn and E.Q. against all Defendants; (3) wrongful death of E.Q. against all Defendants; (4) intentional infliction of emotional distress by Plaintiffs against Defendants Allen and SMC; and (5) negligent infliction of emotional distress by Plaintiffs against Defendants Allen and SMC.  (*Id.*)

**B.**     **Recitation of Undisputed Facts**

The following material facts have been asserted and supported by one or more

Defendants in their Local Rule 7.1 Statements of Undisputed Material Facts, and either admitted

or denied without a supporting record citation by Plaintiffs in their Local Rule 7.1 Responses, or

unopposed by Plaintiffs.  (*See* Dkt. No. 55-3 [Def. United States' Unopposed Rule 7.1

Statement.]) (*Compare* Dkt. No. 56-2 [Def. Allen's Rule 7.1 Statement] *with* Dkt. No. 63-53

[Pl.'s Rule 7.1 Response].)  (*Compare* Dkt. No. 59 [Def. SMC's Rule 7.1 Statement] *with* Dkt.

No. 64-56 [Pl.'s Rule 7.1 Response].)

Prior to the birth of E.Q., Ms. Quinn received pre-natal care at the Guthrie/Fort Drum OB

Clinic from Certified Nurse-Midwife Jennifer Apke and Dr. Elizabeth Lucal, both United States

employees.  On March 27, 2007, Plaintiffs went to SMC because Ms. Quinn was complaining of

decreased fetal movement at approximately 32 weeks' gestation.  During her visit to SMC on

March 27, 2007, Ms. Quinn was treated and released by Dr. Byers, also a United States

employee.

On April 3, 2007, Ms. Quinn, accompanied by Mr. Quinn, again presented to SMC with

complaints of decreased fetal movement, where she was treated by Dr. Lucal.  E.Q. was

delivered by non-emergent Cesarean section due to non-reassuring fetal status at 2:52 p.m.  After

delivery, E.Q. was treated by Dr. Allen.  E.Q. was intubated, and then transferred to the Neonatal

Intensive Care Unit (NICU).  Dr. Allen examined E.Q. and noted that she exhibited a blanched

pallor, absent respiratory effort, and metabolic acidosis.  Medical records reflect that E.Q. began

seizure activity shortly after admission to the NICU.  Dr. Allen kept E.Q. on a ventilator and

ordered laboratory studies, Phenobarbital and intravenous hydration.  At 4:00 p.m., Dr. Allen

ordered an emergency request for a blood transfusion with O Negative blood.[1]  At 4:30 p.m.,

E.Q. was given 40 ccs of packed red blood cells.[2]

The blood bank provided blood to the NICU for E.Q.'s transfusion.  The Emergency

Request for Uncrossmatched Blood form reflects that two blood transfusion service technicians

recorded that a unit of type O Negative blood, with identification number 01KK05804A, was

released.  The Laboratory Discharge Summary Report also reflects the blood type of unit number

01KK05804A as O Negative.  However, the Unit Issue Card from the blood bank reflects that

the blood in unit identification number 01KK05804A was type A Positive.  The technicians

identified on the Emergency Request form are the same technicians identified on the Unit Issue

Card.  The Unit Transfusion Card, reflects that the blood being provided, with identification

number 01KK05804A, was type A Positive.  The Unit Transfusion Card is signed by the

registered nurse ("RN") who administered it, as well as the RN who verified it.[3]

---

[1]     *See* Ex. 5 to Aff. of Ann B. Chase, Oct. 22, 2012, Dkt. No. 63-18, at 4 [E.Q.'s NICU records].

[2]     *See* Ex. 5 to Chase Aff., Dkt. No. 63-18, at 25.  *See also* Ex. M to Decl. of Daniel P. Laraby, Aug. 28, 2012, Dkt. No. 56-18. [Medical records regarding blood type].

[3]     On January 15, 2008, the New York State Department of Health issued its findings after an investigation of a complaint from Mr. Quinn against SMC.  (*See* Ex. U to Decl. of Jennifer P. Williams, Aug. 31, 2012, Dkt. No. 58-10.)  Regional Director Pauline Frazier notified Mr. Quinn that NYSDOH's investigation consisted of "an unannounced visit to [SMC], during which pertinent hospital documents were reviewed, and clinical and administrative hospital staff were interviewed."  *Id.*  In addition, "[Ms. Quinn's and E.Q.'s] medical records were reviewed by physicians board-certified in obstetrics/gynecology and neonatology/perinatal medicine."  *Id.*  Ms. Frazier attached a statement of deficiencies that were found at SMC as a result of NYSDOH's investigation.  Among the deficiencies identified is the failure of the nursing staff to follow generally accepted standards of practice in the administration of blood products.  However, according to the report, NYSDOH acknowledges that its investigation "also determined that the blood product actually administered to the patient [in this case] was never-the-less the correct blood group and Rh factor, i.e., O Negative."  *Id.*  This conclusion was ostensibly based on the unsworn statements of the unidentified technicians and the unidentified

4

Records reflect a slight change in color after the transfusion, but that eventually, E.Q.'s status deteriorated.  Dr. Allen consulted with Dr. Tom Curran at Crouse Medical Center in Syracuse, who suggested that Dr. Allen "stop efforts" because E.Q.'s arterial blood gas was "incompatible with life."[4]  Life support was removed, and E.Q. was pronounced dead at 6:39 p.m.

Plaintiffs executed an authorization for post-mortem examination of E.Q. on April 3, 2007.  Specifically, Plaintiffs authorized SMC to "perform a complete post mortem examination to determine the cause of death or to verify the cause of death, or" to determine "complications contributing to cause of death."[5]  Plaintiffs selected TLC Funeral Home for E.Q.  Ms. Quinn was discharged from SMC on April 5, 2007 at 10:15 a.m.  E.Q.'s body was released to TLC Funeral Home on April 5, 2007 at 4:20 p.m., without an autopsy having been performed.

According to Dr. Allen, she had a conversation with the pathologist approximately two to three days after E.Q.'s death, when she was notified that an autopsy had not been performed because E.Q.'s blood loss was so extreme, it was not appropriate to perform an autopsy.  Dr. Allen called Plaintiffs to notify them that an autopsy had not been performed and relayed to Mr. Quinn that an autopsy had not been performed due to extreme blood loss.  According to Dr. Allen, she did not agree with the pathologist that an autopsy did not need to be performed on E.Q., nor did she tell the pathologist not to perform the autopsy.  Dr. Allen testified that she did

---

supervisor.

[4]      See Ex. S to Williams Decl., Dkt. No. 58-7, at 4-5 [Certified copy of E.Q.'s medical records].

[5]      See Ex. T to Williams Decl., Dkt. No. 58-9, at 1 [Certified copy of Sandra Quinn's medical records].

not remember the name of the pathologist with whom she spoke, but said that "she was foreign and had an accent."[6]

Dr. Yilin Zhang is a staff pathologist at SMC, whose responsibilities include performing autopsies.  Dr. Zhang testified that she does not recall telling a physician in the NICU at SMC that an autopsy could not be performed on E.Q. due to insufficient blood in the vascular system. Dr. Zhang further testified that insufficient blood in the vascular system is not a valid reason for not performing an autopsy.

### C.    Relevant Procedural Background

On November 9, 2007, Ms. Quinn filed a Form 95 with the U.S. Department of the Army, alleging negligence in the medical care and treatment provided to her by employees of the Fort Drum OB-GYN Clinic, resulting in the pain and suffering and wrongful death of her daughter, E.Q., occurring on April 3, 2007.  Mr. Quinn did not submit an administrative claim to the U.S. Department of the Army.

On November 19, 2007, Ms. Quinn commenced an action in the Supreme Court of the State of New York, Jefferson County, against Dr. Allen and SMC as well as C.N.M. Apke, Dr. Lucal, Dr. Byers, Fort Drum OB-GYN Clinic and Guthrie Ambulatory Health Care Clinic, alleging medical malpractice.  That action was discontinued against all defendants except Dr. Allen and SMC on the grounds that the dismissed defendants were protected employees or entities of the United States.

---

[6]      *See* Ex. P to Williams Decl., Dkt. No. 58-4, at 135 [Dep. of Mary J. Allen, D.O., Nov. 2, 2010].

On July 10, 2009, Ms. Quinn commenced this action by filing a complaint against the United States asserting claims of medical malpractice under the Federal Tort Claims Act ("FTCA").

On October 5, 2009, Plaintiffs Mr. and Ms. Quinn commenced an action in the Supreme Court of the State of New York, Jefferson County, against Dr. Allen and SMC, asserting claims of intentional infliction of emotional distress and negligent infliction of emotional distress stemming from allegations that the defendants failed to perform an autopsy on E.Q.

A motion to amend the complaint in this federal court action to join the two complaints pending in State Court was granted.  Plaintiffs subsequently amended their complaint on February 9, 2010.

### D.    Parties' Arguments on Their Motions

#### 1.    Motion for Partial Summary Judgment by the United States

Generally, in its memorandum of law, the United States asserts the following arguments: (1) this Court lacks subject matter jurisdiction of the claims against it by Mr. Quinn because he failed to timely submit an administrative claim pursuant to 28 U.S.C. § 2675(a) and (2) punitive damages may not be awarded against the United States in a Federal Tort Claims Act action pursuant to 28 U.S.C. 2674.  (*See generally* Dkt. No. 55-2, at 5-6 [Def. United States' Mem. of Law].)

Plaintiffs have not opposed this motion.

#### 2.    Motion for Partial Summary Judgment by Dr. Allen

Generally, in her memorandum of law, Dr. Allen asserts the following arguments: (1) Plaintiffs' claim for intentional infliction of emotional distress should be dismissed because it is

time-barred; (2) Plaintiffs' claim for negligent infliction of emotional distress should be dismissed because Plaintiffs were not threatened with physical injury; (3) Plaintiffs' claim based on transfusion of an incompatible blood type should be dismissed because the appropriate blood product was transfused; and (4) Plaintiffs are not entitled to punitive damages because there is no evidence to suggest that Dr. Allen acted with the requisite state of mind.  (*See generally* Dkt. No. 56-1, at 5-11 [Def. Allen's Mem. of Law].)

Generally, in their opposition memorandum of law, Plaintiffs assert the following arguments: (1) Dr. Allen and SMC were negligent in providing care and treatment to E.Q., which malpractice caused and/or contributed to E.Q.'s death; (2) E.Q. was administered incompatible blood; (3) Plaintiffs' negligent infliction of emotional distress claim should not be dismissed because it is based on the negligent handling of a corpse pursuant to *Shultes v. Kane*, 856 N.Y.S.2d 684, 50 A.D.3d 1277 (N.Y. App. Div. 2008); and (4) Plaintiffs' claim for punitive damages should not be dismissed because they have presented facts from which a jury could conclude that the failure of Dr. Allen and SMC to perform an autopsy on E.Q. was for the purpose of preventing discovery of the incompatible blood that had been transfused into E.Q. (*See generally* Dkt. No. 63-52, at 1-7 [Pls.' Opp'n Mem. of Law].)

Generally, in her reply memorandum of law, Dr. Allen asserts the following  arguments: (1) Plaintiffs' claim for intentional infliction of emotional distress should be dismissed because they have failed to dispute that it is time-barred; (2) Plaintiffs have failed to assert a legal basis for their claim of negligent infliction of emotional distress, warranting its dismissal; (3) Plaintiffs are not entitled to punitive damages because they do not have a valid cause of action for the acts or omissions they allege warrant punitive damages; (4) Plaintiffs' argument in the first point of

their memorandum of law should not be considered because it opposes relief not sought by Allen; (5) the New York State Department of Health report, which reflects the finding that the appropriate blood product was administered to E.Q., is admissible and may not be rebutted by the speculative opinion of Plaintiffs' medical witness; and (6) Plaintiffs' response to Dr. Allen's Statement of Material Facts fails to comply with Local Rule 7.1(3).  (*See generally* Dkt. No. 75, at 1-10 [Def. Allen's Reply. Mem. of Law].)

### 3.   Motion for Summary Judgment by SMC

Generally, in its memorandum of law, SMC asserts the following arguments: (1) Plaintiffs cannot state a claim for "conscious pain and suffering" against SMC because (a) it is not vicariously liable for the acts of the United Sates employees or Dr. Allen, (b) E.Q. was administered the correct blood type, and (c) no claim for "conscious pain and suffering" exists for the failure to perform an autopsy, which necessarily occurred after E.Q.'s death; (2) Plaintiffs cannot state a claim for wrongful death against SMC because (a) it is not vicariously liable for the acts of United States employees or Dr. Allen, (b) the correct blood type was administered to E.Q. and did not cause or contribute to her death, and (c) the only acts of negligence alleged against SMC occurred after E.Q.'s death and cannot give rise to a claim for wrongful death; (3) Plaintiffs' claim for intentional infliction of emotional distress should be dismissed because (a) it is time barred, (b) even if not time-barred, the allegations against SMC do not rise to the level of conduct necessary to support a claim, and (c) Plaintiffs' allegations of a "cover up" are speculative and conclusory and were not sufficiently pleaded in the Amended Complaint; (4) Plaintiffs' claim for negligent infliction of emotional distress should be dismissed because the alleged conduct of SMC never unreasonably endangered Plaintiffs' physical safety; (5) SMC

cannot be liable for lack of informed consent because (a) none of the physicians who performed the underlying medical procedures were employed by SMC and (b) a claim for lack of informed consent is not viable where it is based on the failure to obtain informed consent for actions or inactions that are to be taken on a deceased person; and (6) Plaintiffs' claim for punitive damages should be dismissed because (a) Plaintiffs have not stated a viable underlying substantive cause of action against SMC, and (b) even taking Plaintiffs' allegations as true, SMC's actions do not rise to the level of conduct necessary for an award of punitive damages. (*See generally* Dkt. No. 59-1, at 5-25 [Def. SMC's Mem. of Law].)

Generally, in their opposition memorandum of law, Plaintiffs assert the following arguments: (1) SMC is vicariously liable for the acts of Allen under the doctrine of apparent authority pursuant to *Mduba v. Benedictine Hosp*., 384 N.Y.S.2d 527, 52 A.D.2d 450 (N.Y. App. Div. 1976); (2) SMC and Allen were negligent in providing care and treatment to E.Q., which malpractice caused and/or contributed to E.Q.'s death; (3) E.Q. was administered incompatible blood; (4) Plaintiffs have a claim for wrongful death against SMC for Allen's failure to timely provide appropriate treatment and for failing to provide E.Q. with a transfusion of compatible blood; (5) Plaintiffs have a claim of negligent infliction of emotional distress against SMC for its failure to perform an autopsy and for sending E.Q.'s body for embalming prior to performance of an autopsy pursuant to *Shultes v. Kane*, 856 N.Y.S.2d 684, 50 A.D.3d 1277 (N.Y. App. Div. 2008); and (6) Plaintiffs' claim for punitive damages should not be dismissed  because they have presented facts from which a jury could conclude that the failure of Dr. Allen and SMC to perform an autopsy on E.Q. was for the purpose of preventing discovery of the incompatible blood that had been transfused into E.Q.  (*See generally* Dkt. No. 64-55, at 1-10 [Pls.' Opp'n Mem. of Law].)

10

Generally, in its reply memorandum of law, SMC asserts the following arguments: (1) Plaintiffs' response to SMC's statement of material facts should be disregarded because it does not comply with Local Rule 7.1(a)(3); (2) SMC is entitled to summary judgment and/or partial summary judgment on the following claims/issues that Plaintiffs did not address in their opposition papers: (a) Plaintiffs' claims for intentional infliction of emotional distress and lack of informed consent; (b) that SMC is not vicariously liable for the acts of any medical providers who provided care to Ms. Quinn prior to March 27, 2007 or any care provided by Dr. Elizabeth Lucal at any time; and (c) that SMC was not directly negligent and/or did not commit malpractice by delaying the administration of blood to E.Q.; (3) Plaintiffs' claim for the negligent mishandling of a corpse, raised for the first time in their opposition papers, must be dismissed; (4) the alleged failure to obtain an autopsy does not entitle Plaintiffs to conscious pain and suffering and wrongful death damages; (5) Plaintiffs cannot maintain a claim based on their allegation that an autopsy was not performed in order to cover up the alleged malpractice/ negligence, because there are no separate and independent cognizable damages related to the alleged cover-up; (6) the New York State Department of Health report establishes that the correct blood type product was administered to E.Q.; and (6) Plaintiffs cannot maintain their claim for punitive damages because there is no underlying substantive claim on which to base such a claim. (*See generally* Dkt. No. 73, at 1-13 [Def. SMC's Reply. Mem. of Law].)

## II.   GOVERNING LEGAL STANDARDS

### A.   Standard Governing a Motion for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment under Fed. R. Civ. P. 56, the Court will not recite that well-known legal standard in this Decision and

Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

The Court would add only that Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies *each* of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a *specific* citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3). It further provides that, to the extent that the nonmoving party fails to do so, the facts asserted in the movant's Statement of Material Facts will be deemed admitted, as long as they are supported by the record. *Id.*

However, the Court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules [including the local rule requiring specific citations to the record]." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001). Accordingly, the Court exercises its discretion in this case to conduct an independent review of the record where necessary, especially where a specific citation to the record is lacking.

### B.    Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n. 1

(N.D.N.Y. Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722,

2009 WL 2473509, at *2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### C.     Standards Governing Plaintiffs' Claims

#### 1.     FTCA

Under the FTCA, the United States is liable in money damages for a federal employee's

common-law torts "in the same manner and to the same extent as a private individual under like

circumstances...." *Farag v. United States*, 587 F. Supp. 2d 436, 451 (E.D.N.Y. 2008) (quoting

28 U.S.C. § 2674). In suits under the FTCA, "the court [is] to apply the substantive law of the

place where the events occurred," here, New York. *Farag*, 587 F. Supp. 2d at 451 (quoting

*Castro v. United States*, 34 F.3d 106, 110 (2d Cir.1994)).

#### 2.     Medical Malpractice

In order to establish a claim for medical malpractice in New York, a plaintiff must prove

(1) a deviation or departure from accepted community standards of practice, and (2) that such

departure was a proximate cause of the plaintiff's injuries. *See Xiao Yan Chen v. Maimonides

Med. Ctr.*, 960 N.Y.S.2d 199, 201 (N.Y. App. Div. 2013).

 In order to prevail on a medical malpractice claim based on lack of informed consent, a

plaintiff must establish "that (1) the practitioner failed to disclose the risks, benefits and

alternatives to the procedure or treatment that a reasonable practitioner would have disclosed and

(2) a reasonable person in the plaintiff's position, fully informed, would have elected not to

undergo the procedure or treatment." *Orphan v. Pilnik*, 940 N.E.2d 555, 15 N.Y.3d 907, 914

N.Y.S.2d 729 (N.Y. 2010) (citing N.Y. PUB. HEALTH LAW § 2805-d (1),(3) (McKinney 2013).

Moreover, by statute in New York, in order to recover for medical malpractice based on a lack of

informed consent, the case must involve "either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body."  N.Y. PUB. HEALTH LAW § 2805-d(2) (McKinney 2013).  Further, "expert medical testimony is required to prove the insufficiency of the information disclosed to the plaintiff."  *Id.* (citing N.Y. C.P.L.R. § 4401-a (McKinney 2013)).

### 3.      Wrongful Death

The elements of a cause of action for wrongful death in New York are : "(1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent, and (4) the appointment of a personal representative of the decedent."  *Chong v. New York City Transit Auth.*, 441 N.Y.S.2d 24, 25, 83 A.D.2d 546, 547 (N.Y. App. Div. 1981).  With respect to the third element, "[a] distributee is a person entitled to take or share in the property of a decedent under the statutes governing descent and distribution."  *Gabriel v. Cnty. of Herkimer*, 889 F. Supp. 2d 374, 406 (N.D.N.Y. 2012) (quoting N.Y. EST. POWERS & TRUSTS LAW § 1–2.5.  Pecuniary loss includes medical and funeral expenses of the decedent paid by the distributee.  *See Garbriel*, 889 F. Supp. 2d at 406 (citing N.Y. EST. POWERS & TRUSTS LAW § 5–4.1).

### 4.      Conscious Pain and Suffering

In contrast to a claim for wrongful death, which "belongs to the decedent's distributees and is designed to compensate the distributees themselves for their pecuniary losses as a result of the wrongful act," a claim for conscious pain and suffering may only be brought by "the estate of the deceased, rather than the distributees."  *Cragg v. Allstate Indem. Corp.*, 950 N.E.2d 500, 17 N.Y.3d 118, 121, 926 N.Y.S.2d 867, 869 (N.Y. 2011).

In order to justify an award of damages for conscious pain and suffering, a plaintiff has the threshold burden of proving consciousness for at least some period of time following an accident or injury. *See Cummins v. Cnty. of Onondaga*, 642 N.E.2d 1071, 1072, 84 N.Y.2d 322, 324, 618 N.Y.S.2d 615, 616 (N.Y. 1994) (citation omitted).   A plaintiff may meet his burden with direct or circumstantial evidence, but "[m]ere conjecture, surmise or speculation is not enough to sustain a claim for [pain and suffering] damages." *Id.*, at 1072, 84 N.Y.2d at 324-25, 618 N.Y.S.2d at 616 (citation omitted).   "Without legally sufficient proof of consciousness following an [injury], a claim for conscious pain and suffering must be dismissed." *Id.* (citation omitted).

### 5.      Intentional Infliction of Emotional Distress

In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements by a preponderance of the evidence: "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Klein v. Metro. Child Servs., Inc.*, 954 N.Y.S.2d 559, 562, 100 A.D.3d 708, 710-711 (N.Y. App. Div. 2012) Moreover, the underlying conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citation omitted).

In New York, a cause of action for intentional infliction of emotional distress accrues on the date of injury and carries a one year statute of limitations. *See Wilson v. Erra*, 942 N.Y.S.2d 127, 128-129, 94 A.D.3d 756 (N.Y. App. Div. ,2012) (citing N.Y. C.P.L.R. 215(3); *Passucci v. Home Depot, Inc*., 889 N.Y.S.2d 353, 67 A.D.3d 1470, 1471 (N.Y. App. Div. 2009)).

### 6.        Negligent Infliction of Emotional Distress

Under New York law, a plaintiff may establish a claim for negligent infliction of emotional distress under one of two theories: (1) the bystander theory; or (2) the direct duty theory, both of which require a threat or danger of physical harm.  *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir.1996).  Under the bystander theory, a plaintiff may recover when "(1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family."  *Mortise*, 102 F.3d at 696 (citing *Bovsun v. Sanperi*, 461 N.E.2d 843, 61 N.Y.2d 219, 230-31, 473 N.Y.S.2d 357 (1984)).  A plaintiff may recover under a direct duty theory when "she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety."  *Id.* (citing *Kennedy v. McKesson Co.*, 448 N.E.2d 1332, 58 N.Y.2d 500, 504, 462 N.Y.S.2d 421 (1983)).

The New York Court of appeals has also "recognize[d] a cause of action [for negligent infliction of emotional distress] in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from ... special circumstances, which serves as a guarantee that the claim is not spurious.'"  *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Johnson v. State*, 334 N.E.2d 590, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 642 (N.Y. 1975)).  Two such exceptions were recognized in *Johnson*: (1) "emotional harm resulting from negligent transmission by a telegraph company of a message announcing death[;]" and (2) "emotional harm to a close relative resulting from negligent mishandling of a corpse."  *Johnson*, 334 N.E.2d at 382.  Recovery in the latter category of cases is "grounded on a violation of the relative's quasi-property right in the decedent's body."  *Oresky v. Scharf*, 510 N.Y.S.2d 897, 126 A.D.2d 614 (N.Y. App. Div. 1987) (citing *Johnson*, 334 N.E.2d at 382).

### 7. Punitive Damages

The standard for an award of punitive damages in a medical malpractice action "is that a defendant manifest evil or malicious conduct beyond any breach of professional duty." *Dupree v. Giugliano*, 982 N.E.2d 74, 76, 20 N.Y.3d 921, 924, 958 N.Y.S.2d 312, 314 (N.Y. 2012). Further, "[t]here must be aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Id.* (citation and quotation omitted).

### D. Standard Governing United States' Defense of Lack Of Subject Matter Jurisdiction

### 1. Failure to File a Notice of Claim

A prerequisite to filing a claim in federal court under the FTCA is the filing of a notice of claim "to the appropriate Federal agency" within two years after the claim accrues. *See* 28 U.S.C. §§ 2401(b), 2675(a). This requirement is jurisdictional, and accordingly, the plaintiff bears the burden of demonstrating that he has presented a claim to the appropriate federal agency. *See Payne v. United States*, 10 F. Supp. 2d 203, 204 (N.D.N.Y. 1998) (citing *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir.), cert. denied, 464 U.S. 864, 104 S. Ct. 195 (1983)). Thus, the failure to present a claim to the appropriate administrative agency and receive a final determination from that agency before filing an FTCA claim in federal court creates a jurisdictional defect and mandates dismissal of that claim. *See Payne*, 10 F. Supp. 2d at 204 (citing *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 104, n.9 (2d Cir. 1981)).

### 2. Punitive Damages

"[T]he FTCA does not waive the federal government's immunity from suit for punitive damages claims." *Purisima v. Astrue*, No. 12-CV-3528, 2012 WL 5519295, at *4, n.4 (S.D.N.Y.

Nov. 14, 2012) (citing 28 U.S.C. § 2674; *Rufino v. United States*, 829 F.2d 354, 362 (2d

Cir.1987)).  Accordingly, because recovery of punitive damages from the federal government is

barred by 28 U.S.C. § 2674, any claim against the United States for punitive damages under the

FTCA must be dismissed.  *See Petitio v. Hill*, No. 04-CV-4493, 2007 WL 1016890, at *9, n.4

(E.D.N.Y. Mar. 26, 2007).

## III.   ANALYSIS

### A.   Whether Peter Quinn's Claims Against the United States Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated by Defendant United States in its memorandum of law.  (Dkt. No. 55-2, at

5-6 [Def. United States' Mem. of Law].)  The Court would only add the following points.

First, the Court notes that Plaintiffs have failed to oppose the United States' motion for

summary judgment.  As indicated above in Point II.B. of this Decision and Order, in this District,

when a non-movant fails to oppose a legal argument asserted by a movant in support of a

motion, the movant's burden with regard to that argument has been lightened such that, in order

to succeed on that argument, the movant need only show that the argument possesses facial

merit, which has appropriately been characterized as a "modest" burden.  At the very least, the

United States has met the lightened burden that was created by Plaintiffs' failure to respond.

Second, in any event, the Court would reach the same conclusion even if it were to

subject the United States' argument to the more rigorous scrutiny appropriate for a contested

argument.  As indicated above in Point II.D.1. of this Decision and Order, this court lacks

subject matter jurisdiction of a claim brought pursuant to the FTCA that was not first presented

to the appropriate federal agency.  Here, the United States has set forth in its Local Rule 7.1

Statement of Material Facts that Peter Quinn did not submit an administrative claim to the U.S. Department of the Army.  Plaintiffs have not controverted this statement, which is therefore deemed admitted.  Accordingly, because the Court lacks jurisdiction to hear Peter Quinn's claims against the United States under the FTCA, those claims are dismissed.

> **B.     Whether Plaintiffs' Claims of Punitive Damages Against the United States Must Be Dismissed.**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant United States in its memorandum of law.  (Dkt. No. 55-2, at 6 [Def. United States' Mem. of Law].)  The Court would only add the following points.

First, the Court notes that Plaintiffs have failed to oppose the United States' motion for summary judgment.  As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  At the very least, the United States has met the lightened burden that was created by Plaintiffs' failure to respond.

Second, in any event, the Court would reach the same conclusion even if it were to subject the United States' argument to the more rigorous scrutiny appropriate for a contested argument.  As indicated above in Point II.D.2. of this Decision and Order, this court lacks subject matter jurisdiction of any claim for punitive damages against the United States under the FTCA because the United States has not waived its sovereign immunity in that regard.  Accordingly, because the Court lacks jurisdiction to hear claims for punitive damages against the United States under the FTCA, Plaintiffs' claim for punitive damages against the United States is dismissed.

**C.      Whether Plaintiffs' Intentional Infliction of Emotional Distress Claim Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative generally for the reasons stated by Dr. Allen and SMC in their respective memoranda of law. (Dkt. No. 56-1, at 5 [Def. Allen's Mem. of Law]; Dkt. No. 59-1, at 11 [Def. SMC's Mem. of Law].)  The Court would only add the following points.

First, the Court notes that Plaintiffs have failed to oppose either Dr. Allen's or SMC's motions for summary judgment in their favor regarding Plaintiffs' claim for intentional infliction of emotional distress.  As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  At the very least, Allen and SMC have met the lightened burden that was created by Plaintiffs' failure to respond.

Second, in any event, the Court would reach the same conclusion even if it were to subject the arguments of Allen and SMC to the more rigorous scrutiny appropriate for a contested argument.  As indicated above in Point II.C.5. of this Decision and Order, in New York, claims for intentional infliction of emotional distress must be brought within one year of the date of injury.  Here, the latest date of injury is April 5, 2007, when E.Q.'s body was released to the funeral home without an autopsy having been performed.  Therefore, in order to be timely, Plaintiffs must have brought their claim for intentional infliction of emotional distress on or before April 5, 2008.  Instead, Plaintiffs first raised their claim on October 5, 2009 in State Court.  Accordingly, Plaintiffs' claim for intentional infliction of emotional distress is barred by the statute of limitations and must be dismissed.

**D.      Whether Plaintiffs' Negligent Infliction of Emotional Distress Claim Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative generally for the reasons stated by Dr. Allen and SMC in their respective memoranda of law. (Dkt. No. 56-1, at 6-7 [Def. Allen's Mem. of Law]; Dkt. No. 59-1, at 16-19 [Def. SMC's Mem. of Law].)  The Court would only add the following analysis.

As indicated above in Point II.C.6. of this Decision and Order, in New York, claims for negligent infliction of emotional distress are generally not viable where there has been no threat or danger of physical harm to the plaintiff.  Here, the record reflects, and Plaintiffs do not contest, that Plaintiffs were not threatened with physical harm or physically endangered by Defendants' alleged negligent actions in failing to perform an autopsy before E.Q. was embalmed.  Instead, Plaintiffs rely on the exception set forth by the New York Court of Appeals in *Johnson v. State* for the "negligent mishandling of a corpse."  *Johnson*, 37 N.Y.2d at 382. Both Dr. Allen and SMC rely on caselaw supporting their proposed conclusion that the failure to perform an autopsy does not amount to the negligent mishandling of a corpse.  *See Slaughter v. St. Anthony Cmty. Hosp.*, 615 N.Y.S.2d 61, 206 A.D.2d 513, 514 (N.Y. App. Div. 1994).  In *Slaughter*, the plaintiff gave birth to a stillborn infant, after which the attending obstetrician instructed the defendant hospital to carry out a post-mortem examination, which the hospital failed to do.  The court in *Slaughter* granted defendant's motion to dismiss the negligent infliction of emotional distress claim, concluding that it "do[es] not regard the defendant's failure to perform an autopsy on the remains of the stillborn infant as the negligent mishandling of a corpse."  *Id.* (citing, inter alia, *Johnson*, 37 N.Y.2d at 382).  Plaintiffs cite no contrary authority, but merely purport to distinguish *Slaughter* on the ground that E.Q. was not stillborn,

without further explanation of the relevance of that distinction.  The Court finds the legal

conclusion set forth in *Slaughter* to be persuasive authority, and dismisses Plaintiffs' attempt to

distinguish it as irrelevant.  Accordingly, Plaintiffs cannot establish a claim for negligent

infliction of emotional distress against Dr. Allen and SMC as a matter of law, and therefore, the

motions for summary judgment by Dr. Allen and SMC are granted in that regard.  Therefore,

Plaintiffs' claim for negligent infliction of emotional distress is dismissed.

       **E.**      **Whether Plaintiffs' Claims Based on the Transfusion of Incompatible Blood Should Be Dismissed**

      After carefully considering the matter, the Court answers this question in the negative, in

part for the reasons stated by Plaintiffs in their opposition memoranda of law.  (Dkt. No. 63-52,

at 3-4; Dkt. No. 64-55, at 5-6 [Pls.' Mem. of Law].)  The Court would only add the following

analysis.

      Defendants Dr. Allen and SMC contend that there is no question that the blood

administered to E.Q. was compatible O Negative blood and therefore, Plaintiffs' claims based on

their contention that E.Q. was administered incompatible blood should be dismissed.  Both

Defendants rely on the medical records and a report from the New York State Department of

Health ("DOH report"), which, they contend, confirm that the correct blood was administered.

      Plaintiffs rely on the affidavit of their expert, Stuart J. Danoff, M.D., as well as the

medical records as evidence that E.Q. was administered incompatible blood.  Plaintiffs further

counter that the DOH report is inadmissible hearsay, and that, in any event, DOH's conclusion

that O Negative blood was administered is not substantiated by the report or the record in this

case.

22

To be sure, the DOH report likely falls within the exception to the rule against hearsay located in Fed. R. Civ. P. 803(8), which applies to public records.  However, the admissibility of state-agency findings is left "to the sound discretion of the district court."  *Park West Radiology v. CareCore Nat. LLC* , 675 F. Supp. 2d 314, 325 (S.D.N.Y.  2009) (citing *Paolitto v. Brown E. & C., Inc*., 151 F.3d 60, 64-65 (2d Cir.1998)).  In *Park West Radiology*, on a motion in limine to preclude the report of a DOH investigation, the court concluded that while the agency report may be admissible as a report of a government investigation, it is excluded under Fed. R. Evid. 403. The Court explained that the party offering the report would have ample opportunity at trial to present other evidence to the jury on the factual question it sought to establish with the DOH's findings.  Similarly, here, the DOH report includes findings of fact more properly left to a jury. Moreover, Plaintiffs are correct that the report lacks sufficient substantiation of its findings.

In addition, the record in this case includes evidence supporting Plaintiffs' proffered theory that E.Q. was administered incompatible blood.  First, two registered nurses verified that the unit of blood administered to E.Q. was blood type A Positive.  The record also reflects that E.Q.'s blood type was B Positive.  Second, Dr. Danoff's affidavit and testimony include his explanation that a transfusion with incompatible blood will cause hemolysis, shock and organ failure in the recipient.  Dr. Danoff also accurately noted that the medical records reflect a sharp decrease in E.Q.'s oxygen saturation levels after the blood was administered, which, according to his opinion, is inconsistent with what one would expect to see after a transfusion with compatible blood.

For these reasons, questions of fact remain for a jury to decide regarding whether E.Q. was administered incompatible blood.  Accordingly, the motions by Defendants Dr. Allen and SMC for summary judgment in their favor on Plaintiffs' claims insofar as they rely on the transfusion of incompatible blood is denied.

23

**F.      Whether as a Matter of Law, SMC Is Not Vicariously Liable for the Acts of Dr. Allen**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated by Plaintiffs in their opposition memorandum of law.  (Dkt. No. 64-55, at 1-3 [Pls.' Mem. of Law].)  The Court would only add the following analysis.

It is undisputed that Dr. Allen was not employed by SMC in April of 2007, but was instead employed by Upstate Neonatal Care, P.C., an independent professional service corporation.  A hospital such as SMC "ordinarily may not be held vicariously liable for the negligent acts of a treating physician who is not an employee of the hospital but, rather, part of a group of independent contractor physicians."  *Thurman v. United Health Servs. Hosps., Inc*., 833 N.Y.S.2d 702, 39 A.D.3d 934, 935 (N.Y. App. Div. 2007) (citing *Hill v. St. Clare's Hosp*., 490 N.E.2d 823, 67 N.Y.2d 72, 79, 499 N.Y.S.2d 904 (N.Y. 1986)).  However, a hospital may be held liable for the acts of an independent physician under the principle of agency by estoppel, or apparent agency, "where the physician was provided by the hospital or was otherwise acting on the hospital's behalf, and the patient reasonably believed that the physician was acting at the hospital's behest."  *Malcolm v. Mount Vernon Hosp*., 766 N.Y.S.2d 185, 186, 309 A.D.2d 704, 705 (N.Y. App. Div. 2003).  In order for a hospital to be liable for the acts of a non-employee physician under agency by estoppel, (1) there must be words or conduct of the hospital, communicated to a third party, that give rise to the appearance and belief that the physician possesses authority to act on behalf of the hospital; (2) the third party must reasonably rely upon the appearance of authority based on some misleading conduct on the part of the hospital, not the physician; and (3) the third party must accept the services of the physician in reliance not upon that person's skill, but based on his or her relationship with the hospital.  *See Searle v. Cayuga Med. Ctr. at Ithaca*, 813 N.Y.S.2d 552, 28 A.D.3d 834, 836 (N.Y. App. Div. 2006).

24

As the proponent of the motion for summary judgment, SMC bears the burden of proving, as a matter of law, that it is not vicariously liable for Allen's alleged medical malpractice. *See Malcolm*, 766 N.Y.S.2d at 187, 309 A.D.2d at 706. In support of its motion, SMC relies solely on Allen's admission that she was not an employee of SMC in April of 2007, but was instead an employee of an independent group of physicians. Plaintiffs do not dispute that Dr. Allen was not an employee of SMC, but argue that under the doctrine of apparent agency, SMC is liable for Dr. Allen's alleged malpractice. Plaintiffs argue that they did not choose Dr. Allen to care for E.Q., but were provided Dr. Allen's services as the neonatologist covering the NICU on the day that Ms. Quinn delivered E.Q., and that Plaintiffs reasonably believed that Dr. Allen was acting at SMC's behest. Plaintiffs cite Dr. Allen's deposition testimony that it was her belief that she was employed by SMC in April of 2007; correspondence from Dr. Allen to Plaintiffs, on SMC letterhead, wherein Dr. Allen referred to herself as SMC's neonatologist; and correspondence from SMC's Patient Relations Manager to Plaintiffs, wherein Dr. Allen is referred to as SMC's neonatologist.

To be sure, Dr. Allen's belief that she was employed by SMC is irrelevant to the issue of whether SMC is liable for her alleged malpractice under an apparent agency, because the operative question is whether Plaintiffs reasonably relied on the appearance of authority based on some misleading conduct by SMC, not Dr. Allen. *See Searle*, 813 N.Y.S.2d 552, 28 A.D.3d at 836. However, the fact that Plaintiffs were presented with Dr. Allen as the neonatologist in charge of the NICU at the time that Ms. Quinn delivered E.Q. coupled with the fact that SMC's Patient Relations Manager referred to Dr. Allen as SMC's neonatologist in correspondence to Plaintiffs at the very least create a factual question regarding whether an apparent agency existed. Accordingly, SMC has not met its burden to prove as a matter of law that it is not vicariously liable for the alleged malpractice by Dr. Allen.

25

**G.     Whether as a Matter of Law, SMC Is Not Vicariously Liable for the Acts of the United States Employees**

After carefully considering the matter, the Court answers this question in the affirmative generally for the reasons stated by SMC in its memorandum of law in chief and in its reply memorandum of law.  (Dkt. No. 59-1, at 6-8 [Def. SMC's Mem. of Law]; Dkt. No. 73, at 4 [Def. SMC's Reply Mem. of Law].)  The Court would only add the following points.

The Court notes that Plaintiffs have failed to oppose SMC's motion for summary judgment in its favor regarding the issue of its lack of vicarious liability for the actions of United States employees, C.N.M. Apke, Dr. Lucal and Dr. Byers.  As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  At the very least, SMC has met the lightened burden that was created by Plaintiffs' failure to respond.  It is undisputed that Apke, Lucal and Byers are employees of the United States, not SMC.  There is no record evidence identified by any party that would indicate that Apke, Lucal or Byers were under the employment or control of SMC, or that an apparent agency existed which would render SMC liable.  Accordingly, SMC's motion for summary judgment seeking a finding that as a matter of law, it is not vicariously liable for the alleged malpractice of Apke, Lucal or Byers, is granted.

**H.     Whether a Claim of Conscious Pain and Suffering Exists for the Failure to Perform an Autopsy**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by SMC in its memorandum of law.  (Dkt. No. 59-1, at 9-10 [Def. SMC's Mem. of Law].)  The Court would only add the following points.

26

First, the Court notes that Plaintiffs have failed to oppose SMC's motion for summary judgment in this regard.  As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  At the very least, SMC has met the lightened burden that was created by Plaintiffs' failure to respond.

Second, in any event, the Court would reach the same conclusion even if it were to subject the arguments of SMC to the more rigorous scrutiny appropriate for a contested argument.  As indicated above in Point II.C.4. of this Decision and Order, a claim of damages for conscious pain and suffering, which belongs to the estate of the deceased not the distributees, requires legally sufficient proof of consciousness.  Therefore, E.Q.'s estate is not entitled to damages for conscious pain and suffering related to the failure to conduct an autopsy.  Accordingly, SMC's motion for summary judgment is granted in that regard.

**I.      Whether a Claim of Wrongful Death Exists for the Failure to Perform an Autopsy**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by SMC in its memorandum of law.  (Dkt. No. 59-1, at 10-11 [Def. SMC's Mem. of Law].)  The Court would only add the following points.

First, the Court notes that Plaintiffs have failed to oppose SMC's motion for summary judgment in this regard.  As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in

order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  At the very least, SMC has met the lightened burden that was created by Plaintiffs' failure to respond.

Second, in any event, the Court would reach the same conclusion even if it were to subject the arguments of SMC to the more rigorous scrutiny appropriate for a contested argument.  As indicated above in Point II.C.3. of this Decision and Order, a claim for wrongful death requires the showing of a wrongful act which caused the decedent's death.  The failure to conduct an autopsy cannot have caused E.Q.'s death.  Accordingly, SMC's motion for summary judgment is granted in that regard.

> **J.     Whether a Claim of Lack of Informed Consent Exists for the Failure to Perform an Autopsy**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by SMC in its memorandum of law.  (Dkt. No. 59-1, at 19-21 [Def. SMC's Mem. of Law].)  The Court would only add the following points.

First, the Court notes that Plaintiffs have failed to oppose SMC's motion for summary judgment in this regard.  As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  At the very least, SMC has met the lightened burden that was created by Plaintiffs' failure to respond.

Second, in any event, the Court would reach the same conclusion even if it were to subject the arguments of SMC to the more rigorous scrutiny appropriate for a contested

argument.  As indicated above in Point II.C.2. of this Decision and Order, recovery for medical malpractice based on a lack of informed consent is limited to those cases that involve "either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body."  A failure to perform an autopsy and/or embalming without first performing an autopsy do not fall into either of those categories. Accordingly, SMC's motion for summary judgment is granted in that regard.

### K.   Whether Plaintiffs May Recover Punitive Damages

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by SMC and Dr. Allen in their respective memoranda of law and reply memoranda of law.  (Dkt. No. 59-1, at 21-25 [Def. SMC's Mem. of Law]; Dkt. No. 73, at 12-13 [Def. SMC's Reply Mem.]; Dkt. No. 56-1, at 10-11 [Def. Allen's Mem. of Law]; Dkt. No. 75, at 3 [Def. Allen's Reply Mem. of Law].)  The Court would only add the following points.

"A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action."  *Yong Wen Mo v. Gee Ming Chan*, 792 N.Y.S.2d 589, 591, 17 A.D.3d 356, 359 (N.Y. App. Div. 2005) (quoting *Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 634 N.E.2d 940, 83 N.Y.2d 603, 616, 612 N.Y.S.2d 339 (N.Y. 1994)). Plaintiffs clarify in their opposition memorandum of law that they seek punitive damages based on Dr. Allen's and SMC's willful failure to perform an autopsy in order to avoid discovery of the transfusion with incompatible blood.  However, the only remaining causes of action are Plaintiffs' medical malpractice claims.  Because all claims stemming from the failure to perform and autopsy have been dismissed, Plaintiffs are unable to seek punitive damages on that basis. Moreover, regarding the remaining substantive claims against Dr. Allen and SMC, there is no

evidence in the record, nor do Plaintiffs cite any evidence, that the conduct of Dr. Allen or SMC was "evil or malicious." *Dupree*, 982 N.E.2d at 76.  Accordingly, Plaintiffs' purported claim for punitive damages against Dr. Allen and SMC is dismissed.

## IV.    CONCLUSION

As a result of the foregoing, all claims based on the failure to perform an autopsy prior to releasing E.Q. to the funeral home for embalming are dismissed.  Remaining for trial are the claims for wrongful death and lack of informed consent by Peter Quinn against Dr. Allen and SMC and by Sandra Quinn against all Defendants.  Also remaining for trial is the claim for damages for conscious pain and suffering by the estate of E.Q. against all Defendants.  The claim by Plaintiffs for punitive damages is dismissed in its entirety against all Defendants on all causes of action.

**ACCORDINGLY**, it is

**ORDERED** that the motion for partial summary judgment by the United States (Dkt. No. 55) is **GRANTED**; and it is further

**ORDERED** that all claims against the United States by Peter Allen are **DISMISSED**; and it is further

**ORDERED** that remaining for trial against the United States are claims by Sandra Quinn for wrongful death and lack of informed consent and a claim by E.Q.'s estate for conscious pain and suffering; and it is further

**ORDERED** that the motion for partial summary judgment by Mary Allen, D.O. (Dkt. No. 56) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that remaining for trial against Mary Allen, D.O. are claims by Sandra Quinn and Peter Quinn for wrongful death and lack of informed consent and a claim by E.Q.'s estate for conscious pain and suffering; and it is further

**ORDERED** that the claims against Mary Allen, D.O. by Sandra Quinn and Peter Quinn for negligent infliction of emotional distress and intentional infliction of emotional distress are **DISMISSED**; and it is further

**ORDERED** that the motion for summary judgment by Samaritan Medical Center (Dkt. No. 57) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that remaining for trial against Samaritan Medical Center are claims by Sandra Quinn and Peter Quinn for wrongful death and lack of informed consent and a claim by E.Q.'s estate for conscious pain and suffering; and it is further

**ORDERED** that the claims against Samaritan Medical Center by Sandra Quinn and Peter Quinn for negligent infliction of emotional distress and intentional infliction of emotional distress are **DISMISSED**; and it is further

**ORDERED** that counsel are directed to appear on **JUNE 19, 2013 at 1:30 p.m.** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **May 31, 2013**, and the parties are directed to engage in meaningful settlement negotiations prior to the 6/19/13 conference.

Dated: May 20, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge